UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KYLE TAYLOR KIDWELL,

                Plaintiff,

v.                                              Case No:   6:16-cv-2043-Orl-37GJK

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

---

# REPORT AND RECOMMENDATION

Kyle Kidwell (the "Claimant") appeals to the District Court a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI"). Doc. No. 1. Claimant argues that Administrative Law Judge Robert D. Marcinkowski (the "ALJ") committed reversible error because he: 1) applied improper legal standards to nine separate medical opinions; 2) made a determination on Claimant's credibility that was not supported by substantial evidence; and 3) gave an incomplete hypothetical to the vocational expert ("VE"). Doc. No. 16 at 21-32, 37-40, 42-43. Claimant requests that the Commissioner's final decision be reversed for an award of benefits or, in the alternative, be reversed and remanded for further proceedings. *Id.* at 45. For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's final decision be **REVERSED** and the case be **REMANDED** for further proceedings.

I.       PROCEDURAL BACKGROUND

On August 12, 2010, Claimant filed his SSI application. R. 43. On January 4, 2011, Claimant's SSI application was denied initially. R. 267-69. On April 18, 2011, Claimant's SSI

application was denied upon reconsideration. R. 275. On July 11, 2011, Claimant filed a request for hearing. R. 276. On September 28, 2012, Claimant attended a hearing before Administrative Law Judge Albert D. Tutera ("ALJ Tutera"). R. 164-183. On January 11, 2013, ALJ Tutera issued an unfavorable decision finding Claimant not disabled. R. 203-217. On March 9, 2013, Claimant filed a request for review of ALJ Tutera's decision. R. 324-25.

On May 30, 2014, the Appeals Council remanded ALJ Tutera's decision to: 1) consider the environmental restrictions found in Claimant's residual functional capacity ("RFC"); 2) consult a VE regarding Claimant's non-exertional limitations; and 3) evaluate certain third-party functional reports. R. 225-29. On October 2, 2014, Claimant attended a hearing before the ALJ. R. 125-163. On the same day, Claimant filed a notice amending his alleged onset date to October 16, 2009. R. 44, 495. On December 30, 2014, the ALJ issued an unfavorable decision finding Claimant not disabled. R. 230-247. On February 3, 2015, Claimant filed a request for review of the ALJ's decision. R. 403.

On June 4, 2015, the Appeals Council remanded the ALJ's decision for further proceedings to further consider: 1) a medical opinion from Dr. Steven Feiner; 2) the nature of Claimant's colitis, seizures/syncope episodes, and headaches; and 3) a June 12, 2014 third-party report from Claimant's dentist. R. 259-265. On September 29, 2015, Claimant attended another hearing before the ALJ. R. 88-124. On November 9, 2015, the ALJ issued another unfavorable decision finding Claimant not disabled. R. 43-73. On December 2, 2015, Claimant filed a request for review of the ALJ's second decision. R. 38. On September 21, 2016, the Appeals Council denied Claimant's request. R. 1-7. On November 22, 2016, Claimant filed this appeal. Doc. No. 1.

## II.      STANDARD OF REVIEW

The Social Security regulations delineate a five-step sequential evaluation process for determining whether a claimant is disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n. 3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (citations and quotations omitted).

## III.     WEIGHING MEDICAL OPINIONS

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part in determining whether a claimant is disabled. In cases involving an ALJ's handling of medical opinions, "substantial-evidence review . . . involves some intricacy." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 931 (11th Cir. 2013).[1] In *Winschel v. Comm'r of Soc.*

---

[1] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

*Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. at 1178-79 (citations omitted). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179 (citations omitted). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (finding that a failure to state with particularity the weight given to medical opinions and the reasons therefor constitutes reversible error). An ALJ may not "implicitly discount" or ignore any medical opinion. *Winschel*, 631 F.3d at 1178-79; *MacGregor*, 786 F.2d at 1053; *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962-63 (11th Cir. 2015) (finding that it is reversible error for the ALJ to fail to state weight given to a non-examining physician's opinion).

Absent good cause, the opinion of a treating physician must be given substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). However, good cause exists to give a treating physician's opinion less than substantial weight when the opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

IV.    ANALYSIS

    A.  Physicians' Opinions[2]

        1)  Dr. Cabiac

On August 18, 2014, Dr. Annette Cabiac, a treating physician, completed a Disability Impairment Questionnaire. R. 1543-1547. Dr. Cabiac stated that Claimant can sit for less than one hour in an eight-hour workday and can stand and/or walk for a total of less than one hour in an eight-hour workday. R. 1545. Dr. Cabiac found that Claimant is likely to be absent from work more than three times per month. R. 1547. Dr. Cabiac made her opinion retroactive to December 1, 2005. *Id.*

The ALJ gave little weight to Dr. Cabiac's opinion, noting that the opinion's "sitting, standing, and walking restrictions are not supported by the record as explained thoroughly in this decision." R. 61. When making his finding, the ALJ did not cite to any specific evidence. *Id.* The ALJ also gave little weight to Dr. Cabiac's opinion because her statement "regarding [Claimant being] absent from work more than three times a month is speculative and conclusory." *Id.* The ALJ also noted that Dr. Cabiac made her opinion retroactive to December 1, 2005, yet Dr. Cabiac only started treating Claimant on December 13, 2013. *Id.* Claimant argues that the ALJ improperly gave little weight to Dr. Cabiac's opinion. Doc. No. 16 at 24.

The ALJ erred in his treatment of Dr. Cabiac's opinion for three reasons. First, the ALJ failed to specifically identify any evidence contradicting Dr. Cabiac's findings. R. 61. In *Poplardo v. Astrue*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593, at * 11 (M.D. Fla. Jan. 4, 2008), the Court

---

[2] The medical opinions of record provide functional limitations within a wide range of severity. For example, David Fleischman, Ph.D found that Claimant only needs accommodations at work to account for his limitations as a slow reader and writer. R. 875-76. On the other hand, an opinion from Dr. Joan Kidd states that Claimant suffers from debilitating seizures that impact his ability to work. R. 867. Furthermore, Dr. Rachel Eyma opined that Claimant would not be able to work even in a sedentary capacity due to multiple mental and physical impairments. R. 969.

found reversible error because the ALJ failed to identify support for giving a treating physician's opinion less than substantial weight. *Id.* Here, the ALJ, in conclusory fashion, stated that the opinion's "sitting, standing, and walking restrictions are not supported by the record …" R. 61. Despite the suggestion that the facts supporting this finding are thoroughly set forth elsewhere in his opinion, the ALJ fails to identify sufficient evidence in support and instead provides a summary of medical evidence rarely touching upon Claimant's sitting, standing, and walking limitations. R. 61-64.[3]

Second, the ALJ's finding as to the portion of Dr. Cabiac's opinion regarding Claimant's absences from work is not supported by substantial evidence. Although the ALJ labels that portion of Dr. Cabiac's opinion as both speculative and conclusory, the ALJ fails to identify any basis for doing so. *See Evans v. Astrue*, No. 2:08cv237–WC, 2009 WL 1537851, at * 3-4 (M.D. Ala. Jun. 2, 2009) ("Where the ALJ discounts a treating physician's opinion as being conclusory, the Court would expect the ALJ to articulate why that opinion is conclusory").

Third, as a basis for giving Dr. Cabiac's opinion little weight, the ALJ noted that Dr. Cabiac made her opinion retroactive to December 1, 2005, yet Dr. Cabiac only started treating Claimant on December 13, 2013. R. 61. Such a reason is unavailing because "the opinion of a treating physician may not be rejected solely by virtue of being retrospective in nature; the opinion must be 'considered' just like any other doctor's opinion." *Rosenburg v. Comm'r of Soc. Sec.*, No. 6:07-cv-1510-Orl-19DAB, 2008 WL 4186988, at * 5 (M.D. Fla. Sept. 8, 2008) (citations omitted). Because the ALJ's stated reasons for giving little weight to Dr. Cabiac's opinion are not supported

[3] After giving little weight to Dr. Cabiac's opinion, the ALJ gave some weight to the opinion of Dr. Debra Troiano, a reviewing physician who indicated that Claimant had the capability to stand and/or walk two hours in an eight-hour workday and sit about six hours in an eight-hour workday. R. 61. After giving some weight to Dr. Troiano's opinion, however, the ALJ noted the medical opinions of M. Joanna Vilar, Psy.D; David Fleischmann, Ph.D; Dr. Rachel Eyma; Dr. Maria J. Lozano; Dr. Scott Farmer; Earl Teller, Ph.D; and Judith LaMarche, Ph.D., all of which relate to Claimant's mental limitations and provide no insight regarding Claimant's sitting, standing, and walking limitations. R. 61-64.

by substantial evidence, it is recommended that the Court find reversible error in the ALJ's treatment of the same.

### 2) Dr. Kidd

On October 26, 2011, Dr. Joan Kidd, a treating physician and general practitioner, opined that Claimant's seizures are debilitating and "impact his abilities to drive and perform some of the other activities of daily living and impact his ability to work." R. 867. Dr. Kidd also stated that Claimant's seizures have not been well-controlled with medication. *Id.*

On September 27, 2012, Dr. Kidd opined that Claimant has recurrent seizures and headaches. R. 966. Dr. Kidd again stated that Claimant's seizures are debilitating and impact his ability to drive and his activities of daily living. R. 967. Dr. Kidd found that Claimant is not physically capable of returning to work on a full-time daily basis, even in a sedentary job. R. 969.

On July 16, 2013, Dr. Kidd completed a Multiple Impairment Questionnaire. R. 1535-42. Dr. Kidd diagnosed Claimant with epilepsy, migraine headaches, ADHD, mood disorder, obsessive compulsive disorder. R. 1535. Dr. Kidd noted that Claimant has moderate limitations in using his left hand for fine manipulation. R. 1539. Dr. Kidd stated that Claimant is likely to be absent from work more than three times per month due to his impairments. R. 1541.

In a separate opinion (the "Follow-Up Opinion"), Dr. Kidd opined that the Multiple Impairment Questionnaire remains accurate and valid. R. 1534. The Follow-Up Opinion states the following. Claimant has significant limitations in doing repetitive reaching, handling, fingering, or lifting because of cramping in his left hand. R. 1533. Claimant has moderate limitations in his ability to grasp, turn, and twist objects with his left hand and use his left fingers/hands for fine manipulations. *Id.* Claimant is incapable of performing low stress work because stress exacerbates

his migraines and mood disorder. *Id.* The Follow-Up Opinion is neither signed nor dated, but a heading on its first page identifies Dr. Kidd as the author. R. 1533-34.

The ALJ gave little weight to Dr. Kidd's opinions for five reasons. First, the ALJ gave little weight to Dr. Kidd's opinions altogether because she is not a specialist in mental health or neurology. R. 58. Second, the ALJ found a portion of Dr. Kidd's September 27, 2012 opinion less than persuasive because she rendered Claimant disabled, which is a determination reserved to the Commissioner. R. 58-59. Third, regarding Claimant's seizures, the ALJ noted Dr. Kidd's acknowledgement that the workup for Claimant's seizures was inconclusive and, therefore, there was no objective medical evidence as to the cause of his seizures. R. 59 (citing R. 1535).[4] Fourth, the ALJ found Dr. Kidd's statements regarding Claimant's manipulative limitations unsupported by the record.[5] *Id.* Fifth, the ALJ gave little weight to the Follow-Up Opinion because it was not signed or dated, and "there is no indication that Dr. Kidd even prepared the document." *Id.*

The undersigned finds the ALJ's first reason for giving little weight to Dr. Kidd's opinions is not supported by substantial evidence. It is true that "[m]ore weight is accorded to the opinion of a specialist than the opinion of a source who is not a specialist." *King v. Barnhart*, 320 F. Supp.2d 1227, 1231-32 (N.D. Ala. 2004) (citing 20 C.F.R. § 404.1527(d)(5)). However, in order to give little weight to the opinions of Dr. Kidd, a treating physician, the ALJ must show good cause. *See Phillips*, 357 F.3d at 1240-41 (stating the three good cause reasons for rejecting a

---

[4] Dr. Kidd's Multiple Impairment Questionnaire states that family members have witnessed Claimant's seizures. R. 1535.

[5] When making this finding, the ALJ referred to a portion of his opinion where he found that Claimant's left upper extremity disorder was not a severe impairment. R. 59 (citing R. 48). In that portion of his opinion, the ALJ found that Claimant did not complain of any pain and had a full range of motion in the upper left extremity during a post-operation visit. R. 48 (citing R. 754). The ALJ also noted that: 1) x-rays revealed a decrease in the fracture line and increased incorporation of the bone; and 2) at an October 2010 physical examination, Claimant had normal grip as well as normal gross and fine movements. *Id.* (citing R. 547). Claimant does not challenge these specific findings from the ALJ.

treating physician's opinion). Here, the fact that Dr. Kidd is not a specialist in mental health or neurology is not good cause for giving little weight to her opinions. *Id.*

The ALJ fifth reason for giving little weight to the Follow-Up Opinion is also not supported by substantial evidence. The ALJ gave little weight to the Follow-Up Opinion because it is neither signed nor dated, and "there is no indication that Dr. Kidd even prepared the document." R. 59. The Follow-Up Opinion, however, contains a heading identifying Dr. Kidd as its author. R. 1533. Furthermore, the final sentence of the Follow-Up Opinion states that "[t]he Multiple Impairment Questionnaire <u>completed by me</u> on July 16, 2013 remains accurate and valid to date." R. 1534 (emphasis added). Thus, because some of the reasons stated as the basis for the weight given to Dr. Kidd's opinions are not supported by substantial evidence, it is recommended the Court find reversible error in the ALJ's treatment of the same.[6]

### 3) Dr. Teller

On September 25, 2015, Dr. Earl Teller, Ph.D., a one-time examining physician, completed a psychological evaluation. R. 1605. Dr. Teller summarized Claimant's clinical findings and diagnosed Claimant with bipolar disorder, obsessive compulsive disorder, generalized anxiety disorder, intellectual disability, and ADHD. R. 1608. Based on his review of the record, Dr. Teller found that while "[Claimant] has not been able to work, it is highly likely that the demands and

---

[6] The undersigned finds no error in the ALJ's second, third, and fourth reasons for giving little weight to Dr. Kidd's opinions. For his second reason, the ALJ applied the proper legal standards to the portion of Dr. Kidd's September 27, 2012 opinion which rendered Claimant disabled. *See Wilcox v. Comm'r, Soc. Sec. Admin,* 442 Fed. Appx. 438, 440 (11th Cir. 2011) ("a statement by a medical source that a claimant is "disabled" or "unable to work" is not binding on the ALJ"). For his third reason, the ALJ correctly noted that there was no objective medical determination on the basis for Claimant's seizures. R. 1535 (noting that the workup to Claimant's seizures was "inconclusive"). *See also Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1159 (11th Cir. 2004) (finding that a treating physician's report "may be discounted when it is not accompanied by objective medical evidence …"). For his fourth reason, the ALJ properly gave little weight to the portions of Dr. Kidd's opinions regarding Claimant's upper left extremity and manipulative limitations because the ALJ cited to evidence contradicting those limitations at step two. R. 48. As noted above, an ALJ may give a treating physician's opinion less than substantial weight if it is contradicted by the medical record. *See supra* p. 4.

stresses of even simple, non-skilled labor would trigger psychiatric decompensation in [Claimant], resulting in unsuccessful efforts to be gainfully employed." R. 1609.

On September 26, 2015, Dr. Teller completed a Mental Impairment Questionnaire. R. 1610-14. Dr. Teller found that Claimant had marked limitations in, *inter alia*, understanding and remembering detailed instructions, maintaining attention and concentration for extended periods, completing a workday without interruptions from his psychological symptoms, maintaining socially appropriate behavior, and making plans independently. R. 1613. Dr. Teller made the Mental Impairment Questionnaire's findings retroactive to December 1, 2005. R. 1614.

The ALJ gave little weight to Dr. Teller's opinions because: 1) they are not substantiated by the longitudinal medical evidence; 2) Dr. Teller saw Claimant only once, which was based on a referral from Claimant's representative; 3) Dr. Teller's psychological evaluation states that he reviewed "some medical records" but did not identify which records were reviewed; 4) Dr. Teller's psychological evaluation based its opinions mainly on the history provided by Claimant and his mother; and 5) Dr. Teller made his Mental Impairment Questionnaire Retroactive to December 1, 2005 but does not cite to any clinical notes close to that date. R. 64. Claimant argues that the ALJ did not provide sufficient reasons for giving little weight to Dr. Teller's opinions. Doc. No. 16 at 30-31.

For his first reason, the ALJ stated that Dr. Teller's opinions are not substantiated by the longitudinal medical evidence in the record, but cites no evidence to support that finding. R. 64. The ALJ cannot reject a medical opinion with a conclusory statement. *See Kahle v. Comm'r of Soc. Sec.,* 845 F. Supp.2d 1262, 1271-72 (M.D. Fla. 2012) (finding that ALJ erred in discounting an examining physician's opinion with a conclusory statement that it was "inconsistent with the

evidence of record"). Thus, the ALJ's first reason for giving little weight to Dr. Teller's opinions is not supported by substantial evidence.[7]

For his third reason, the ALJ noted that in his psychological evaluation, Dr. Teller stated that he reviewed "'some medical records' but did not state which medical records were reviewed." R. 64. Dr. Teller, however, stated that he reviewed a March 4, 2009 treatment note from Dr. Ivan Fleishman. R. 1606, 1612. It is also apparent that Dr. Teller reviewed Claimant's hospital records from 2009 through 2013. R. 1606 (noting that "according to his medical records, [Claimant] had hospitalizations from 2009 through 2013"). Thus, the ALJ's third reason for giving little weight to Dr. Teller's opinions is not supported by substantial evidence.

For his fourth reason, the ALJ stated that Dr. Teller "based [his psychological evaluation] mainly on the history provided by the [Claimant] and [his] mother." R. 64. Dr. Teller's psychological evaluation, however, states that it is based on, *inter alia*: 1) a review of Claimant's medical records; 2) a review of Claimant's academic records; and 3) formal examination results regarding Claimant's cognitive skills and mood. R. 1605, 1607. Thus, the ALJ's fourth reason for giving little weight to Dr. Teller's opinions is not supported by substantial evidence.[8] R. 64. Because three of the ALJ's reasons for giving little weight to Dr. Teller's opinions are not supported by substantial evidence, it is recommended that the Court find reversible error in the ALJ's treatment of the same.[9]

---

[7] No error was made in the ALJ's second reason for giving little weight to Dr. Teller's opinions because a one-time examining physician's opinion is not entitled to any specific weight or deference. *McSwain*, 814 F.2d at 619.

[8] The ALJ also noted that Dr. Teller made his Mental Impairment Questionnaire retroactive to December 1, 2005, but Dr. Teller does not cite to any clinical notes close to such date. R. 64. The ALJ cannot reject Dr. Teller's opinion merely because it is retrospective. *See King v. Astrue*, No. 3:09–cv–229–J–MCR, 2010 WL 1038476, at *8 (M.D. Fla. Mar. 19, 2010) (citation omitted) ("Neither a treating nor examining physician's opinion should be dismissed merely because it is retrospective")).

[9] The undersigned has reviewed the opinions of Drs. Feiner, Sadek, Farmer, Hate, Horsley, and Troiano and finds no error in the ALJ's treatment of those opinions. *See* Doc. No. 16 at 23-30. Thus, the ALJ's errors with regard to opinions

**B.  Claimant's Credibility**

At step four, the ALJ found Claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms "not entirely credible." R. 66.[10]  The ALJ made four separate credibility findings. First, the ALJ considered Claimant's lack of work history and found that it cast "doubt upon any correlation between [Claimant's] impairments and his alleged inability to work." R. 67. The ALJ also noted Claimant's volunteer work at his mother's office despite alleging that he cannot work because he goes to the bathroom ten times per day. *Id.* Second, the ALJ noted inconsistencies between certain medical records and Claimant's testimony:

> [Claimant] endorsed sharp pain and bleeding in stool after going to the bathroom approximately [ten] times a day after eating wheat and dairy. He mentioned having to go to the emergency room [three] to [four] times a week because of his diarrhea and bloody stools. However, medical records from his gastroenterologist reveal that [Claimant] reported that every three months or so he has an episode of diarrhea, especially after eating fatty foods. [R. 1008]….
>
> [Claimant] discussed his medication and the side effects associated with them. He stated he feels dizzy sometimes and has poor appetite, headaches, and angry disposition …. Pertaining to his allegation of side effects from his medication, Dr. Shaheda Akhtar indicated in a letter dated July 9, 2009, that [Claimant] "tolerat[es] his [medications] well. No side effects [were] either observed or reported." [R. 716]. [Claimant] denied having any side effects from his medication to his neurologist on August 1, 2014. [R. 1619].

of Drs. Cabiac, Kidd, and Teller are dispositive and there is no need to address the remaining medical opinions. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 Fed. Appx. 960, 963 n. 3 (11th Cir. 2015) (per curiam) (no need to analyze other issues when case must be reversed due to other dispositive errors).

[10]  In the Eleventh Circuit, subjective complaints of pain are governed by a two-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding based on substantial supporting evidence in the record. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The lack of a sufficiently explicit credibility finding may be grounds for remand if credibility is critical to the case's outcome. *Id.*

- 12 -

R. 64-65 (emphasis added). Thus, the ALJ found Claimant's testimony not entirely credible because he found that certain medical records contradicted Claimant's allegations regarding the frequency of his gastrointestinal issues and his medication side effects. *Id.*

Third, the ALJ summarized the medical evidence as a whole and found that the "objective evidence reveals [Claimant's] medical condition is not as severe as [he] has alleged." R. 67-70. Finally, the ALJ considered Claimant's testimony regarding his daily living activities and found that such activities cannot be "objectively verified." R. 65-66. Claimant argues that the ALJ committed reversible error in making these findings. Doc. No. 16 at 38-40.

### 1) Claimant's Work History

The ALJ noted that Claimant's earning history is very poor. R. 67. The ALJ also found Claimant's testimony regarding his volunteer work at his mother's office contradicts his allegation that he could not work because he goes to the bathroom ten times per day. *Id.* While Courts within this District have allowed an ALJ to consider a claimant's lack of work history, they have also said that such evidence should be carefully considered because a lack of work history does not always warrant an inference of unwillingness to work but rather may be the result of an inability to work. *Rivers v. Colvin*, No. 6:14-cv-1295-Orl-MCR, 2016 WL 403798, at * 5 (M.D. Fla. Feb. 3, 2016) (citing *Schaal v. Apfel*, 134 F.3d 49, 502 (2d Cir. 1998) ("A claimant's failure to work might stem from her inability to work as easily as her unwillingness to work. Therefore, a consideration of work history must be undertaken with great care").

Here, the ALJ found that Claimant's earning history is very poor and also noted Claimant's volunteer work at his mother's office despite his allegations that he cannot work because he goes to the bathroom ten times per day. R. 67. The ALJ then considered the medical evidence, which the ALJ found contradicted Claimant's testimony, namely with regard to the frequency of his

gastrointestinal issues and his medication side effects. R. 64-65. Considering these two findings, the ALJ adequately accounted for Claimant's allegations of his inability to work by considering his poor earnings history along with the contradictions between the medical evidence and Claimant's testimony. R. 64-65, 67. Considering the foregoing, it is recommended that the Court find no error in the ALJ's consideration of Claimant's work history.

### 2) Inconsistencies between Medical Records and Claimant's Testimony

Claimant also challenges the ALJ's finding that there were inconsistencies between certain medical records and Claimant's testimony regarding his gastrointestinal issues and medication side effects. Doc. No. 16 at 39. As noted above, the ALJ cited to specific evidence that he found contradicted Claimant's allegations regarding the frequency of his gastrointestinal issues and his medication side effects. *See supra* p. 13. Claimant does not directly challenge the ALJ's characterization of such evidence. Doc. No. 16 at 39. Instead, Claimant argues that the evidence is: 1) not significantly different from his testimony; and 2) not reflective of the impact of Claimant's medications over the entire period of disability. *Id.* The undersigned declines Claimant's invitation to reweigh the evidence. Doc. No. 16 at 39. The Court must give substantial deference to the ALJ's decision even if the evidence as a whole supports a contrary conclusion. *See supra* p. 3. Accordingly, it is recommended that the Court find no error in the ALJ's consideration of the inconsistencies between certain medical records and Claimant's testimony.[11]

---

[11] Claimant's third argument stating that the ALJ's consideration of the medical evidence violates 20 C.F.R. §416.929(c)(2) and Social Security Ruling 96-7p is rejected because the ALJ considered the objective medical evidence along with Claimant's daily living activities. R. 65-66. *See also* SSR 96–7p, 1996 WL 374186, at *1 (July 2, 1996) (noting that an "individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence") (emphasis added). Claimant's fourth argument that the ALJ erred by finding Claimant's testimony about his daily activities not credible because such limitations could not be objectively verified is also rejected because the ALJ provided other reasons in support of his credibility finding which are supported by substantial evidence, namely that the medical evidence contradicted Claimant's testimony regarding his gastrointestinal issues and his medication side effects. R. 64-65. *See Aponte v. Commissioner of Soc. Sec. Admin.*, No. 6:12–cv–32–Orl–DAB, 2013 WL 178336, at * 6 (M.D. Fla. Jan. 17, 2013) (noting that an ALJ does not commit

### C.  RFC and VE Hypothetical

At step three, the ALJ found that Claimant had moderate difficulties with regard to concentration, persistence, or pace ("CPP"). R. 56. Claimant's RFC and the VE hypothetical do not address CPP. R. 57, 119-20. Both, however, limit Claimant to understanding, remembering, and carrying out simple instructions and performing simple and routine tasks. R. 57, 120. Claimant argues that the ALJ's RFC finding and VE hypothetical are flawed because they did not include the ALJ's finding that Claimant has moderate difficulties in CPP. Doc. No. 16 at 42.

"When medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in CPP, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Winschel,* 631 F.3d at 1180-81. At step four, the ALJ noted a psychological evaluation from David Fleischmann, Ph.D. stating that Claimant has the intellectual skills to achieve certification within the helping profession but would need continuing accommodations in his future training. R. 875-76. Dr. Fleischmann also found that Claimant's job responsibilities must take into consideration that he is a slow reader and writer. *Id.* The ALJ found Dr. Fleischmann's findings to be consistent with Claimant's ability to understand, remember, and carry out simple instructions and perform simple routine tasks. R. 62. Thus, the ALJ presented medical evidence demonstrating that Claimant could engage in simple, routine tasks or unskilled work despite his limitations in CPP and accounted for such limitations by limiting Claimant's RFC to understanding, remembering, and carrying out simple instructions and performing simple and routine tasks. *See Winschel*, 631 F.3d at 1180–81. Accordingly, it is recommended that the Court find no error in the ALJ's RFC finding and the VE hypothetical.

---

reversible error in requiring a claimant's activities to be objectively verified if the other reasons given in support of the credibility finding are supported by record evidence).

### D.  Award of Benefits

Because the undersigned recommends that the Court find reversible error in the ALJ's decision, the undersigned must address Claimant's request for reversal for an award of benefits. Doc. No. 16 at 45. Reversal for an award of benefits is only appropriate when: 1) the Commissioner has already considered the essential evidence and it establishes disability beyond doubt; or 2) where the Claimant has suffered an injustice. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993)

Claimant filed his application on August 12, 2010, and thus, his SSI application has been pending for more than seven years. R. 43. While the undersigned is troubled by the prolonged history of Claimant's application, the record before the Court does not establish that Claimant is disabled beyond doubt. For example, the ALJ gave great weight to the opinion of Dr. Ahmad Kamme, a treating physician who found that Claimant should not do any heavy lifting, pushing, or pulling greater than thirty pounds, but otherwise may be employed.[12] R. 58, 1188. Moreover, the Appeals Council has twice remanded this case for further proceedings, but Claimant has not suffered an injustice because the reasons for the previous remands were different than the issues presented in Claimant's current appeal. R. 225-229, 259-265. Thus, it is recommended that the Court find Claimant's request for reversal for an award of benefits unavailing.

### V.   CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that the Court:

1. **REVERSE AND REMAND** the Commissioner's final decision for further proceedings pursuant to sentence four of Section 405(g); and

2. Direct the Clerk to award judgment in favor of Claimant and to close the case.

---

[12] The ALJ found that Claimant was able to perform light work, which involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. R. 57; 20 C.F.R. § 404.1567. The Commissioner's regulation regarding light work states that to perform such work, the claimant must be able to do "substantially all" of the activities stated therein. *Id.*

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

Recommended in Orlando, Florida on February 2, 2018.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy